## Whitney et al. v. Fife, Judge, et al.

(Decided Oct. 29, 1937.)

HARLIN & COLEMAN, WILSON & VINCENT and J. E. WISE for appellants.

FAUREST & FAUREST and LAYMAN & LAYMAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

The appellants brought this suit in the Hardin circuit court seeking writs of prohibition against H. B. Fife, judge of the Hardin county court, and W. A. Barry, judge of the police court for the city of Elizabethtown, Ky., to restrain them from issuing warrants of arrest or otherwise prosecuting appellants for alleged violations of the motortruck laws of Kentucky.

The substance of the allegations of plaintiff's petition is: That A. M. Whitney is the owner and operator of and engaged in operating a large number of motortrucks for the transportation of freight and merchandise under fixed routes and with definitely fixed termini in Kentucky and through the state of Kentucky, and through other states of the United States, and over certain routes permitted and directed by the authority acting under the laws of the commonwealth of Kentucky and other states connecting with lines and routes of Kentucky, and is engaged in interstate as well as intrastate commerce by virtue of authority of the commonwealth of Kentucky and properly designated officials of the United States, directing and authorizing the shipment and transportation of freight and merchandise through and between the states of the United States under the interstate commerce laws of the United

States; that said A. M. Whitney operates and conducts said business under the firm name and style of A. M. Whitney & Co.; and that the other plaintiffs are drivers, chauffeurs, and employees of A. M. Whitney.

It is further alleged that during the months of December, 1935, to February, 1937, and while the employee plaintiffs, as drivers and operators of said motortrucks for the plaintiff Whitney, as aforesaid, and the gross weight for each exceeding 18,000 pounds, and while in the discharge of their duties in operating and driving said trucks and semitrailers over and along a public highway between Louisville, Ky., and Nashville, Tenn., and known as 30-W, which highway traverses the county of Hardin and the city of Elizabethtown, the defendants, as county judge of Hardin county and judge of the police court of the city of Elizabethtown, respectively, issued various warrants for the arrest of the plaintiffs who are the chauffeurs, drivers, and operators of the motortrucks and semitrailers of their coplaintiff, Whitney, pursuant to which warrants they were arrested, tried, and fined by the said county judge and police judge, and the amount of said fines being less than the amounts provided under the laws of the commonwealth of Kentucky from which appeals might be prosecuted to any court; that the defendants are threatening to and will compel them to pay and satisfy said fines or they will be committed to prison upon their failure and refusal to so satisfy the same, and that each of the defendants as such officers are threatening to and will issue additional warrants for the arrest of the plaintiffs as drivers and operators of said motortrucks, semitrailers, etc., and will do so in the event that they shall continue to operate and drive said motortrucks for the plaintiff, A. M. Whitney, and that the said defendants as such officials will issue warrants for the arrest of plaintiff, A. M. Whitney, as the owner of said trucks and semitrailers and motor vehicles; that all said warrants issued and those about to be issued against the plaintiffs were and will be issued under certain pretended laws of the commonwealth of Kentucky, as set out in various sections of the Kentucky Statutes, to wit: Section 2739g-82, limiting the gross weight including load of motortrucks and semitrailers to a maximum of 18,000 pounds; section 2739g-83, dealing with the height including any part of the body or load of motortrucks and semitrailers; section 2739g-84, dealing with the width

of such motor vehicles; and sections 2739g-85, 2739g-86, dealing with the length and speed of such motor vehicles, and perhaps other sections of the Statutes governing and regulating the operation and use of motortrucks and semitrailers over the highways of Kentucky, including sections 2739g-91, 2739g-92. Section 2739g-91, supra, vests the commissioner of motor vehicles for the commonwealth of Kentucky and county judges with certain discretionary powers regarding the load and speed of such motor vehicles; and, section 2739g-92, supra, excepts the restrictions mentioned in section 2739g-91 as to trucks or trailers owned by the United States, the commonwealth of Kentucky, any county, city or incorporated town in the state of Kentucky. It is alleged in the petition, and argued in brief of the appellants, that the last two above-named subsections of the statute are discriminatory, and for that reason are unconstitutional and invalid, as well as all of the other sections of the statute mentioned regulating and governing the use and operation of motortrucks, trailers, and semitrailers over the highways of the state of Kentucky. The court sustained a demurrer to the petition, and appellants have appealed.

It is insisted that each and all the sections of the statute, supra, are violative of the Fourteenth Amendment to the Constitution of the United States, as well as violative of the rights guaranteed to the appellants under sections 59 and 60 of the Constitution of Kentucky.

It is asserted in brief of appellant that the various sections of the statute complained of were enacted by the Legislature on account of the undue hostility of corporations engaged in the transportation of goods and merchandise by means other than motortrucks. Motive of the Legislature in the enactment of a law is not a subject of review by the courts. The constitutionality of an act only can be inquired into by the courts. Hence, we are not concerned with the alleged motive of the Legislature.

The question here presented is no novel one for this court, nor indeed, other courts, including the Supreme Court of the United States. There is perhaps a greater number of sections of the statute brought into question in this case, but they all relate to the same question; namely, the right of the Legislature to enact laws for

the regulation, operation, and control of motor vehicles using the public highways of the state for private gain or commercial purposes.

It is insisted that the highway involved in this action, 30-W, has been constructed with the aid of the federal government for the purpose of being used for, and to accommodate, interstate commerce, and the various sections of the statute involved interfere with the conduct of an interstate commerce business engaged in by appellants. The fact that the United States contributes to or assists states in the building of roads does not take from or limit the state in the exercise of its police power or other right to control and regulate the use of its roads when used for commercial purposes. In the case of Morris v. Duby, 274 U. S. 135, 143, 47 S. Ct. 548, 550, 71 L. Ed. 966, 971, Chief Justice Taft, writing for the Supreme Court, said:

"An examination of the acts of Congress discloses no provision, express or implied, by which there is withheld from the state its ordinary police power to conserve the highways in the interest of the public and to prescribe such reasonable regulations for their use as may be wise to prevent injury and damage to them. In the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens. Hendrick v. Maryland, 235 U. S. 610, 622 et seq., 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 167, 37 S. Ct. 30, 61 L. Ed. 222. Of course the state may not discriminate against interstate commerce. Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286. But there is no sufficient averment of such discrimination in the bill. In the Kuykendall Case this court said (p. 315, 45 S. Ct. 325):

" 'With the increase in number and size of the vehicles used upon a highway, both the danger and the wear and tear grow. To exclude unnecessary vehicles—particularly the large ones commonly used by carriers for hire—promotes both safety and economy. State regulation of that character is

valid even as applied to interstate commerce, in the absence of legislation by Congress which deals specifically with the subject.'"

In Ashland Transfer Company v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 693, 87 A. L. R. 534, the same question as is here presented was involved, and the same reasons and argument advanced in support of the alleged invalidity of the Statutes. In holding the Statutes valid, the court said:

"[1, 2] The authority which is embraced within what is known as the 'police power' of a state or government is sometimes difficult to define; but all possess it, and its exercise is, perhaps, the most useful power that a government employs in the administration of the public affairs of the state for the protection of its citizens. We are concerned in this case only with public highways. Their regulation, maintenance, and protection, as well as the safety of travelers upon them, is everywhere and by all courts conceded to be within the police power of the jurisdiction maintaining them."

In that opinion the court referred to and quoted with approval from the case of Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 588, 76 L. Ed. 1167, as follows:

"It is therefore apparent that the right of Kentucky to regulate traffic upon its public roads, as the attacked act seeks to do, is universally recognized without exception, and, unless in doing so it infringes upon some federal or state constitutional provision, it must prevail.

"We have seen from the excerpt from the Sproles opinion that regulations as to the size, weight, height, etc., 'are manifestly subjects within the broad range of legislative discretion,' and that 'to make scientific precision a criterion of constitutional power would be to subject the state to an intolerable supervision hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure.' In other words, the law as universally declared by both state and federal courts is that such regulatory acts will be upheld and enforced in all cases where they are confined to what is termed 'reason-

able' regulation, and that neither exact precision nor even scientific calculation is essential to reasonability."

The further insistence is that the limitations placed by the statute upon motortrucks do not apply to passenger busses, and for that reason the statute is discriminatory and invalid. This question is answered in the case of Sproles v. Binford, supra. The court said:

"But in passing upon the question of the constitutional power of the state to fashion its regulations for the use of the highways it maintains, we cannot ignore the fact that the state has a distinct public interest in the transportation of persons. We do not think that it can be said that persons and property, even with respect to their transportation for hire, must be treated as falling within the same category for purposes of highway regulation. The peculiar importance to the state of conveniences for the transportation of persons in order to provide its communities with resources both of employment and of recreation, the special dependence of varied social and educational interests upon freedom of intercourse through safe and accessible facilities for such transportation, are sufficient to support a classification of passenger traffic as distinct from freight. There is no constitutional requirement that regulation must reach every class to which it might be applied—that the Legislature must regulate all or none. Silver v. Silver, 280 U. S. 117, 123, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939. The state is not bound to cover the whole field of possible abuses. Patsone v. Pennsylvania, 232 U. S. 138, 144, 34 S. Ct. 281, 58 L. Ed. 539. The question is whether the classification adopted lacks a rational basis. [Citing cases.] We cannot say that such a basis is lacking in this instance."

See, also, to the same effect, Slusher v. Safety Coach Transit Company, 229 Ky. 731, 17 S. W. (2d) 1012, 66 A. L. R. 1378. In the Kentucky case just cited, it is pointed out that the use of the highways for the purpose of private gain is special and extraordinary, and, in general, may be restrained, prohibited, or conditioned as the legislative power may prescribe. See, also, Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed.

596; Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, and note too, 87 A. L. R. page 736.

It is also insisted that sections 2739g-91 and 2739g-92 are discriminatory and class legislation in violation of sections 59 and 60 of the Constitution of Kentucky, in that section 2739g-91 vests the commissioner of motor vehicles and county judges with certain discretionary powers regarding the load and speed of motortrucks; and, section 2739g-92, excepts those restrictions imposed in section 2739g-91, as to trucks or trailers owned by the United States, commonwealth of Kentucky, any county, city, or incorporated town in the state of Kentucky. The state and political subdivisions mentioned in section 2739g-91 are public agencies, and the use of such motor vehicles by such public agencies are presumed to be for the benefit of the public generally, and not for private gain or commercial purposes. The state has the burden of constructing, maintaining, and repairing its public highways, and the legislative body may authorize one standard or use of the highways by the state or other political subdivisions thereof, when used in the interest of the public, and prescribe a different standard or use when used by individuals for private gain or commercial purposes. Very clearly the classification prescribed in sections 2739g-91 and 2739g-92, is based upon distinctive and natural reasons, and, therefore not violative of section 59 and 60 of the Constitution of Kentucky.

To support their contention that the statutes under consideration constitute an unreasonable interference with interstate commerce, appellants rely upon the case of Barnwell Bros. v. South Carolina State Highway Department (D. C.) 17 F. Supp. 803, recently rendered, a copy of which opinion is filed with the record; but we have not before us the book and page in which it is published, if published at all. That opinion holds that the South Carolina statute limiting the width of trucks to 90 inches and loads to 20,000 pounds did not violate the Fourteenth Amendment to the Constitution of the United States, but that it did interfere with interstate commerce on certain defined roads the use of which were in question in that case. It appears that that decision was based mainly upon the evidence taken on certain issues joined in that case. In the case at bar, we have no such issues as were presented in the South Carolina Case; and

whether or not we would follow that opinion, had the present case been practiced like or similarly to it, we need not determine. We may say, however, that it appears to us that the conclusions reached by the court in the South Carolina decision are not in accord with the decisions of the Supreme Court of the United States in so far as it held the South Carolina statute invalid as to certain roads, and failed to give effect to the principle that the legislative authority had the right to use its judgment in determining what regulations were necessary or proper, as was held in the various opinions of the Supreme Court cited herein.

It follows from what has been said that the statutes in question are valid, and the court did not err in sustaining the demurrer to the plaintiffs' petition.

Judgment affirmed.

The whole court sitting.